*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 29, 2021

Plaintiff-Appellee,

v

No. 352604
Macomb Circuit Court
LC No. 2018-004312-FC

JEROME ANTHONY BANKSTON,

Defendant-Appellant.

Before: GADOLA, P.J., and JANSEN and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for armed robbery, MCL 750.529, two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b, receiving and concealing a stolen motor vehicle, MCL 750.535(7), and assault with intent to murder, MCL 750.83. Defendant also appeals as of right his separate bench trial convictions of being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, and an additional count of felony-firearm.[1] Defendant was sentenced as a third-offense habitual offender, MCL 769.11, to 12 to 30 years' imprisonment for armed robbery, 5 to 10 years' imprisonment for receiving and concealing stolen property, 28 to 60 years' imprisonment for assault with intent to murder, 5 to 10 years' imprisonment for felon-in-possession, and two years' imprisonment for each felony-firearm conviction. We affirm.

---

[1] Defendant filed a motion to sever the felon-in-possession charge from the remainder of the charges for trial, arguing that he would be prejudiced if the jury was aware of his previous criminal history. Defendant proposed a "simultaneous bench trial" for the felon-in-possession charge, in which only the trial court would hear proofs relating to that charge. The prosecution did not object to the motion and noted that the related felony-firearm charge should be severed as well. The court agreed to conduct a bench trial for those two counts.

# I. BACKGROUND

This case arises from an armed robbery of an armored-truck guard that took place outside of Bank of America in Clinton Township on August 28, 2014. The guard, Ryan Smith, testified that he was transporting money into the bank at around 1:00 p.m. when a man, later identified as Bernard Allen, approached him from behind with a silver revolver pointed at Smith. Smith allowed Allen to take the money, and after Allen started to run off with the money, Smith removed his gun from his holster and began firing at Allen, who returned fire. Smith testified that he eventually realized he was being shot at from two different directions—from Allen and from the front seat of a nearby silver minivan. Smith turned his attention and gunfire to the minivan, which quickly drove out of the parking lot. Allen was killed during the shootout. Although several bystanders witnessed the robbery, none of the witnesses were able to identify the driver of the minivan.

Later that same day, the minivan was found abandoned a short distance from the bank. The ignition had been punched out, there was a screwdriver in the cup holder, several windows had been shot out, and there was blood on the steering wheel, driver's seat cushion, and the driver's side seatbelt latch or receiver. The police also discovered a revolver underneath a vest on the middle row of seating. The police had few leads on the identity of the driver until Detective James Hertel received an anonymous tip that the person the police were looking for was defendant. The tipster further indicated that defendant had been shot in the robbery, "stitched up by a friend," and left town. Defendant was already known to have been in contact with Allen, and his cell phone records demonstrated that he was near Bank of America just before the robbery took place.

The police were unable to locate defendant, and the investigation remained inactive for several years until, in 2018, a local Combined DNA Index System database administrator got a case-to-case match between the DNA profile from the blood found in the minivan and a profile entered by the New Orleans Police Department. Defendant was eventually located in Louisiana, arrested, and transported to Michigan for trial in this case. Defendant's DNA was analyzed, compared to the blood samples from 2014, and confirmed to be a match. The prosecution also presented evidence that defendant had what appeared to be a bullet wound scar in a location consistent with the trajectory of one of the bullets that struck the minivan.

# II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecution did not present sufficient evidence to support his felon-in-possession and related felony-firearm bench-trial convictions. We disagree.

Challenges to the sufficiency of the evidence are reviewed de novo on appeal. *People v Bailey*, 330 Mich App 41, 46; 944 NW2d 370 (2019). "Evidence is sufficient if, when viewed in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. (quotation marks and citation omitted). In reviewing the sufficiency of the evidence, this Court must draw reasonable inferences and assess witness credibility in favor of the verdict. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of [a] crime." *People v Savage*, 327 Mich App 604, 613; 935 NW2d 69 (2019) (quotation marks and citation omitted; alteration in original).

Conviction of felon-in-possession under MCL 750.224f requires proof of two elements: "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424." *People v Bass*, 317 Mich App 241, 268; 893 NW2d 140 (2016). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *Id*. at 268-269 (quotation marks and citation omitted). "Possession of a firearm can be actual or constructive, joint or exclusive." *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011). "The test for constructive possession is whether the totality of the circumstances indicates a sufficient nexus between defendant and the contraband." *People v Minch*, 493 Mich 87, 91-92; 825 NW2d 560 (2012) (quotation marks and citation omitted). The defendant must knowingly have the power and intention to exercise dominion and control over the firearm. *Id*. at 92.

Directly after the robbery, Smith told the police that the driver of the minivan pointed a gun at him. Although he did not initially report that the driver shot at him, Smith was adamant at trial that he saw muzzle flashes coming from the front of the vehicle, which prompted him to return fire. Viewing this evidence in the light most favorable to the prosecution, a fact-finder could conclude beyond a reasonable doubt that the driver of the minivan had a firearm in his possession during the robbery. At trial, defendant's identity as the driver of the minivan was firmly established. When the abandoned minivan was located shortly after the robbery, there was blood on the driver's side of the vehicle with at least some of the blood appearing fresh. The blood samples that were analyzed by the Michigan State Police matched defendant's DNA profile, and defendant had a scar that was consistent with the trajectory of the bullet that passed through the passenger side head rest before striking the steering wheel. On the basis of the foregoing, the prosecution presented sufficient evidence to establish beyond a reasonable doubt that defendant possessed a firearm and was guilty of both felon-in-possession and felony-firearm.[2]

### III. ANONYMOUS TIP TESTIMONY

Next, defendant argues that Detective Hertel's testimony about the anonymous tip was improperly admitted. We disagree.

Defendant failed to preserve this issue for review by objecting at trial on the same ground he asserts on appeal. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). Unpreserved claims of error are reviewed for plain error affecting substantial rights. *People v Caddell*, 332 Mich App 27, 40; 955 NW2d 488 (2020) (regarding constitutional errors); *People v Brown*, 326 Mich App 185, 195; 926 NW2d 879 (2018) (regarding evidentiary errors). "Under the plain error rule, a defendant bears the burden of establishing that: (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *People v Wiley*, 324 Mich App 130, 150-151; 919 NW2d 802 (2018) (quotation marks and citation omitted). "To establish

---

[2] Defendant's argument on appeal centers on a fully-loaded gun that was found under a vest in the abandoned minivan after the robbery, and he contends that he did not know the gun was in the car because it was hidden. While the trial court mentioned this gun in its findings from the bench, whether defendant knew of this gun is not dispositive to whether there was sufficient evidence to support his bench-trial conviction for felon-in-possession—and the related felony-firearm conviction—based on the evidence discussed above.

that a plain error affected substantial rights, there must be a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings." *Id*. at 151 (quotation marks and citation omitted). Reversal is warranted "only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Thorpe*, 504 Mich at 252-253.

Testimony concerning anonymous tips can raise admissibility concerns under state evidentiary rules and the United States Constitution. First, hearsay—"a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," MRE 801(c)—is generally inadmissible. MRE 802. Second, from a constitutional standpoint, "[t]he Confrontation Clause prohibits the admission of all out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination." *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007).

Defendant argues that Detective Hertel's testimony about receiving an anonymous tip was inadmissible for both of these reasons. But when an out-of-court statement is offered to prove something other than the truth of the matter asserted, it is neither hearsay nor barred by the Confrontation Clause. *People v Putman*, 309 Mich App 240, 246; 870 NW2d 593 (2015). Without objection by defense counsel, Detective Hertel described receiving a tip that defendant was involved in the robbery, shot, "stitched up by a friend," and left town. The prosecution asked Detective Hertel about how the tip affected the course of his investigation, prompting Detective Hertel to explain that the investigation then focused on defendant, whereas defendant had previously been only a person of interest because of his relationship with Allen. With their attention on defendant, the police were able to discover his phone number and obtain cell phone records demonstrating that defendant was in the vicinity of Bank of America moments before the robbery. Thus, while the prosecution's intentions for eliciting testimony about the anonymous tip were not discussed below, we can infer from the prosecution's subsequent questioning that the testimony was offered to prove why the investigation turned toward defendant. Such a purpose offends neither defendant's constitutional right to confront the witnesses against him nor the rule against hearsay. *Id*. Consequently, defendant has not established that a plain or obvious error occurred. *Wiley*, 324 Mich App at 150-151.

Defendant also suggests that this evidence was inadmissible under MRE 403, which permits the exclusion of otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The unfair prejudice at issue in MRE 403 refers to "the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Caddell*, 332 Mich App at 57 (quotation marks and citation omitted). Defendant suggests that the anonymous tip evidence was unfairly prejudicial because it not only identified him as a possible suspect, but also placed him in the driver's seat of the minivan, described his injury, and indicated that he left the state after the crime. Defendant's position is unpersuasive because Detective Hertel's testimony about the tip was not offered to prove the truth of the matter asserted. Moreover, the "prejudice" that defendant points to is not the type of prejudice against which the probative value of evidence is weighed under MRE 403. See *id*. Accordingly, defendant has not established that a plain error occurred

when the trial court failed to sua sponte exclude this testimony under MRE 403. *Wiley*, 324 Mich App at 150-151.

Defendant alternatively argues that he was denied the effective assistance of counsel when his attorney failed to object to Detective Hertel's testimony about the anonymous tip. We disagree.

To preserve a claim of ineffective assistance of counsel, the defendant must move for a new trial or evidentiary hearing before the trial court, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or file with this Court a motion to remand for an evidentiary hearing, *People v Abcumby-Blair*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347369); slip op at 8, lv pending. Defendant did not take any of these steps below or on appeal, so this issue is unpreserved. Claims of ineffective assistance of counsel involve a mixed question of fact and constitutional law. *People v Hoang*, 328 Mich App 45, 63; 935 NW2d 396 (2019). This Court generally reviews factual findings for clear error and constitutional questions de novo. *Id*. Because this issue is unpreserved, review is limited to mistakes apparent on the record. *Id*.

A defendant who claims he or she was denied the effective assistance of counsel bears a heavy burden to overcome the presumption of effective assistance. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018) (quotation marks and citation omitted).

Defendant cannot establish that defense counsel's failure to object fell below an objective standard of reasonableness because the testimony was not inadmissible, and an attorney has no obligation to raise a meritless objection. *Savage*, 327 Mich App at 617. He is likewise unable to establish that he was prejudiced by defense counsel's performance. Again, defendant suggests that he was prejudiced by the testimony because it identified him as the driver, indicated that he was wounded, that his wound was treated by a friend, and that defendant left town afterward. Apart from the nature of medical attention defendant may have received (which has little if any relevance to the case), the jury could have drawn the same conclusions from other evidence. Defendant's ineffective assistance of counsel argument therefore fails. *Trakhtenberg*, 493 Mich at 51.

## IV. HABITUAL OFFENDER SENTENCING

Lastly, defendant argues that he was improperly sentenced as a third-offense habitual offender because one of the underlying offenses, a 2011 conviction for attempted resisting and obstructing a police officer (resisting and obstructing), MCL 750.81d(1); MCL 750.92(3), was only punishable by a maximum of one year in jail and, therefore, did not constitute a felony. "Claims of scoring error or that the trial court relied on inaccurate information when determining a sentence must be preserved by raising the issue at sentencing, in a motion for resentencing, or in a 'proper motion to remand' filed with this Court." *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012) (resolving challenge regarding habitual offender sentencing enhancement). Defendant did not object to use of his 2011 conviction to enhance his sentence as a habitual

offender.  In fact, his attorney acknowledged that defendant was properly treated as a third-offense habitual offender because of his previous convictions for assault with a dangerous weapon and attempted resisting and obstructing.  Therefore, this issue is not merely unpreserved, it is also waived.  See *People v Hershey*, 303 Mich App 330, 349; 844 NW2d 127 (2013) (explaining that express approval of trial court's action waives claim of error).  Direct review of this claim of error is not permitted because waiver extinguishes any error.  *People v McKinley*, 496 Mich 410, 418; 852 NW2d 770 (2014).  Nonetheless, we can still consider this question because defendant also contends that he was denied the effective assistance of counsel when his attorney acquiesced to the sentencing enhancement.  *People v Biddles*, 316 Mich App 148, 166; 896 NW2d 461 (2016).

MCL 769.11 allows the trial court to enhance a defendant's sentence if the defendant "has been convicted of any combination of 2 or more felonies or attempts to commit felonies . . . ."  What constitutes a felony for purposes of habitual offender enhancement is dictated by the Code of Criminal Procedure, MCL 760.1 *et seq.*, *People v Smith*, 423 Mich 427, 443-445; 378 NW2d 384 (1985), which defines the term "felony" as "a violation of a penal law of this state for which the offender, upon conviction, may be punished by imprisonment for more than 1 year or an offense expressly designated by law to be a felony," MCL 761.1(f).

Defendant's claim of error stems from his 2011 conviction of attempted resisting and obstructing.[3]  Defendant argues that this conviction was a misdemeanor with a maximum possible sentence of one year in jail under MCL 750.92(3) and therefore could not be used to enhance his sentence under MCL 769.11.  Assuming defendant's calculation of the potential term of incarceration is correct, defendant fails to appreciate that the habitual offender statute allows enhancement not only on the basis of previous felony convictions, but also "attempts to commit felonies."  MCL 769.11(1).  The statutory language contains no requirement that the attempted felony must itself constitute a felony.  *People v Slocum*, 156 Mich App 198, 200; 401 NW2d 271 (1986).[4]  Defendant attempted to commit resisting and obstructing—a "felony punishable by imprisonment for not more than 2 years . . . ."  MCL 750.81d(1).  Because defendant's 2011 conviction was for an attempt to commit a felony, it was properly considered for purposes of the third-offense habitual offender statute, and defense counsel did not perform deficiently by failing to raise a meritless objection.  *Savage*, 327 Mich App at 617.

Affirmed.

/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Colleen A. O'Brien

---

[3] Defendant does not dispute that the other predicate offense, a 2008 conviction for assault with a dangerous weapon, is a felony for purposes of habitual offender enhancement.

[4] "Although published decisions of this Court issued before November 1, 1990, are not precedentially binding, MCR 7.215(J)(1), they may be considered as persuasive authority."  *People v Mathews*, 324 Mich App 416, 428 n 4; 922 NW2d 371 (2018).

-6-